UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                                           Case No. 06-44392-CEC

Davanand Singh,                                                      Chapter 7
                                        Debtor.
------------------------------------------------------------x
Debra Kramer, as Trustee of the
Estate of Davanand Singh,
                                        Plaintiff,
                                                                                 Adv. Pro. No. 08-1036-CEC
                        -against-

Vishwa Sooklall,
                                        Defendant.
------------------------------------------------------------x


<u>DECISION</u>


Appearances:

David A. Blansky, Esq.                          Michael J. Connolly, Esq.
LaMonica Herbst & Maniscalco, LLP       118-34 128 Street
3305 Jerusalem Avenue                          Ozone Park, NY 11420-2827
Wantagh, NY 11793                               Attorney for Defendant
Attorney for Plaintiff




CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion for summary judgment of Debra Kramer, the Chapter 7 Trustee ("Plaintiff" or "Trustee") on her complaint against Vishwa Sooklall ("Defendant"), seeking to avoid a transfer of property of the estate made by Davanand Singh ("Debtor"), who died subsequent to the commencement of this bankruptcy case, to the Defendant as a fraudulent conveyance pursuant to § 548[1] and New York's Debtor and Creditor Law ("DCL") §§ 273, 275 and 276, or in the alternative, as a preferential transfer pursuant to § 547 ("Complaint").  The Trustee also seeks recovery of her legal fees and costs under DCL § 276-a.  For the reasons set forth below, judgment is granted in favor of the Trustee.  The Trustee's request for legal fees and costs under DCL § 276-a is denied.

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (E), 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Procedural History

On November 16, 2006 (the "Filing Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.   On March 3, 2008, the Trustee commenced this adversary proceeding, seeking to avoid a transfer to the Defendant in the amount of $101,826.46, which constituted proceeds of the sale of a coop owned by the Debtor.  The Trustee filed a motion for summary judgment, and after briefing and preliminary arguments, the parties

---

[1]Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.

stipulated that one issue of material fact exists: whether the Defendant held the equitable interest

in the coop and the Debtor only legal title, such that the Defendant was entitled to the sale

proceeds.  An evidentiary hearing was held on this issue.

Facts

The following material facts in this case are undisputed.

On or about October 17, 2002, the Defendant gave the Debtor a check in the amount of

$10,000, dated October 16, 2002, to be used as a down payment for the purchase of a

cooperative apartment located at 35-10 Clearview Expressway, Unit 348, Bayside, New York

11361 (the "Property").  After consummation of the purchase, title to the Property was in the

Debtor's name, as were the shares of stock and lease for the Property.  The Defendant did not

attend the closing of the Debtor's purchase of the Property.  Defendant's name never appeared in

the title record or on the shares of stock for the Property.  The Debtor applied for a mortgage to

finance the balance of the purchase price of the Property (the "Mortgage").  Debtor was the sole

mortgagor and the only obligor named in the underlying note.  The Defendant did not acquire

title to the Property and did not apply for the mortgage for the Property.  Defendant was unable

to qualify for such a loan because of other mortgages outstanding, on which he was obligated.

In or about October of 2005, Debtor entered into a contract to sell the Property for

$210,000.00.  The Defendant did not see the contract of sale until his deposition on November

30, 2007.  When the Property was initially offered for sale, the Debtor signed the listing and

broker agreements.  The Debtor exclusively communicated with the buyers of the Property and

their counsel, and negotiated with the real estate broker concerning the broker's commission;

Defendant did not participate in any of these.  A closing on the sale of the Property was held on

or about February 10, 2006.  The Debtor attended the closing; the Defendant did not.  The Mortgage was satisfied at the closing.  According to the HUD-1 settlement statement executed by Debtor at the closing, the sum of $103,858.63 was due him from the proceeds of sale of the Property.  The Defendant did not see the HUD-1 settlement statement until after the closing on the sale.

From the proceeds of the sale, the Defendant received a bank check in the sum of $101,826.46, dated February 9, 2006 (the "Transfer").  A bank check was also issued at the closing and made payable to the Debtor in the sum of $15,000, dated February 9, 2006.

The Debtor had incurred substantial debts prior to the date of the Transfer that remained due and owing as of the Filing Date.  The Debtor was insolvent at the time of the Transfer or rendered insolvent as a result of the Transfer.  The proofs of claim filed in Debtor's case total $353,655.60.  The Debtor died on April 6, 2008.

Positions of the Parties

The Trustee argues that the Transfer was a transfer of "an interest of the debtor in property" as provided by § 548, avoidable by the Trustee as a fraudulent conveyance, or as a preferential transfer under § 547.  The Trustee contends that the Transfer constitutes an actual fraudulent transfer under § 548(a)(1)(A) and DCL § 276; a constructive fraudulent transfer under § 548(a)(1)(B) and DCL §§ 273 and 275; or in the alternative, a preferential transfer under § 547.  The Trustee also contends that pursuant to Fed. R. Civ. P. 8(c), the Defendant waived his right to assert the affirmative defenses raised in the Amended Opposition to the Motion for Summary Judgment ("Opposition") by failing to plead them in the answer.

In opposition to the Trustee's fraudulent conveyance claims, the Defendant argues that the

$101,826.46, which constituted the Transfer, was not "an interest of the debtor in property"

subject to the Trustee's avoidance powers because the Debtor was acting as an agent of the

Defendant for the purchase and sale of the Property.  11 U.S.C. § 548(a).  Additionally, the

Defendant argues that subsequent to the sale of the Property, the Defendant gave or loaned the

Debtor amounts that exceed the amount of the Transfer.

Discussion

Waiver of Affirmative Defenses

The Trustee contends that the Defendant waived his right to assert affirmative defenses

by failing to plead them in his answer as required by Fed. R. Civ. P. 8(c)(1), made applicable to

this adversary proceeding by Fed. R. Bankr. P 7008(a).  The Defendant first interposed the

defense that he, not the Debtor, held the equitable interest in the Property, in his opposition to

the Trustee's motion for summary judgment.  The Trustee argues that the failure to assert this

affirmative defense in the answer should, as a matter of law, be deemed a waiver of the defense.

The Trustee's motion cannot be granted on this basis.  "It is well established in this

Circuit that an affirmative defense may be asserted even at summary judgment where the party

opposing the affirmative defense has the opportunity to respond effectively to that defense, and

has otherwise suffered no prejudice as a result of its late pleading." In re Livent, Inc.

Noteholders Sec. Litig., 355 F. Supp. 2d 722, 727 (S.D.N.Y. 2005) (citing Astor Holdings Inc. v.

Roski, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003));  Kelly v. Al Tech., 2010 U.S. Dist.

LEXIS 37807, 09 Civ. 962, at *57-58 (S.D.N.Y. Apr. 8, 2010); Palmer v. Garuti, 2009 U.S. Dist.

LEXIS 11432, 3:06-CV-795, at *23 ((D. Conn. Feb. 17, 2009) (allowing affirmative defense of

good faith not raised in answer where both parties had opportunity to brief the issue and address it in oral argument precluding any prejudice to the party opposing the defense).

The Trustee had ample opportunity to respond to the affirmative defenses and did so in his reply.  Furthermore, whether the Debtor acted as an agent for the Defendant in the purchase of the Property, was stipulated by both parties as the sole factual issue to be addressed at the evidentiary hearing, and the Trustee had the opportunity to cross examine the Defendant extensively at the hearing.  Clearly, the Trustee was afforded sufficient notice of the defenses to respond to them and was not prejudiced by the Defendant's delay.

Defendant's Arguments

Agency

The Defendant argues that the Transfer cannot be avoided by the Trustee because the Debtor was never entitled to the sale proceeds that constituted the Transfer, and therefore, the funds did not constitute "an interest of the debtor in property" under § 548 (a)(1).  "A trustee can only avoid and recover 'property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'"  Buchwald v. Di Lido Beach resort, Ltd. (In re McCann, Inc.), 318 B.R. 276, 282 (Bankr. S.D.N.Y. 2004) (quoting Begier v. Internal Revenue Serv., 496 U.S. 53, 58 (1990)).

The Defendant testified that the Debtor was acting as an agent on behalf of the Defendant for the purchase of the Property, in exchange for a finder's fee which was paid to the Debtor when the Property was sold.  (Tr.,[2] 7:23-25; 8:1-7; 10:8-11.)  The Defendant further testified

---

[2] Citations to "Tr." refer to the transcript of the evidentiary hearing held on March 1, 2010.

that, although title was held in the Debtor's name, the Defendant provided the funds for the down payment, (Tr., 8:11) paid all carrying charges, (Tr., 9:1-4) and funded home improvement projects (Tr., 9:5-10), consisting of "approximately thirty thousand dollars to repair and upgrade [the Property] so as to increase its value for resale."  (Amended Opposition, Par. 7(d).).

Because there is no writing memorializing the purported agency relationship between the Debtor and the Defendant, the Defendant is asking the Court to find the existence of such a relationship based on his testimony.  This request must be denied.  Under New York law, "the authority of an agent who signs a contract for the sale of land must be authorized in writing." Roberts v. Karimi, 251 F.3d 404, 406 (2d Cir. 2001); Cohen v. Treuhold Capital Group, LLC (In re Cohen), 2010 U.S. Dist. LEXIS 894, 09-CV-3724, at *57-58 (E.D.N.Y. Jan. 6, 2010) (citing N.Y. Gen. Oblig. Law § 5-703(2)) ("A contract . . . for the sale[] of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto *authorized by writing*") (emphasis added); See also 1-11 Warren's Weed New York Real Property § 11.08 ("An agent's authorization to contract for the purchase of real property for an undisclosed principal must be in writing.").  It is undisputed that the Defendant did not grant authority to the Debtor in writing to act on his behalf.  Therefore, any contention by the Defendant that he was entitled to the proceeds of the sale of the Property because the Debtor acted as his agent in connection with the purchase and sale must be rejected.

Equitable Ownership and Unjust Enrichment

Alternatively, the Defendant argues that he was the equitable owner of the Property, and that he was for that reason entitled to the proceeds of the sale.  Without explicitly articulating the

argument, Defendant seems to be taking the position that the Debtor held the Property and its proceeds in constructive trust for him, and that the Transfer was therefore not a transfer of "an interest of the debtor in property" as provided by § 548.[3]

A constructive trust may be imposed to prevent unjust enrichment where, for example, "'property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest.'" In re Rama Group, 01-CV-0424E, 2002 U.S. Dist. LEXIS 8864, at *7-8 (W.D.N.Y. May 6, 2002) (quoting Simonds v. Simonds, 45 N.Y.2d 233, 242, 380 N.E.2d 189, 408 N.Y.S.2d 359 (N.Y. 1978)).

Whether the imposition of a constructive trust is appropriate is an issue governed by state law. Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard Appliance Corp.), 874 F.2d 88, 93 (2d Cir. 1989); Cadle Co. v. Mangan (In re Flanagan), 503 F.3d 171, 181 (2d Cir. 2007). In New York, a party seeking the imposition of a constructive trust must generally establish a confidential or fiduciary relationship, a promise, express or implied, a transfer made in reliance on that promise, and unjust enrichment. In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352 (2d Cir. 1992). "Although these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be 'rigidly limited.'" Id. (quoting Simonds, 45 N.Y.2d at 241). While the absence of some of these factors may not preclude the imposition of a constructive trust, "it is the final factor - - unjust enrichment - - that 'lies at the heart' of the

---

[3]Defendant cites a Florida case, In re Moodie, 362 B.R. 554 (Bankr. S.D. Fla. 2007) to support an argument that a resulting trust was created in his favor. This case is inapposite; under New York law, a resulting trust may be established only if title is taken without consent of the person who paid the consideration, or if the property was purchased with another person's money in violation of a trust. Mendel v. Hewitt, 161 A.D. 2d 849, 901, 555 NYS 2d 899 (3d Dep't 1990) (citing N.Y.E.P.T.L. § 7-1.3(a)). Here, no such facts are alleged.

remedy." <u>Skippers & Mar. Servs. V. KfW</u>, 2008 U.S. Dist. LEXIS 101510, 06 CV 07041, at *13

(Dec. 8, 2008) (<u>quoting</u> <u>Brand v. Brand</u>, 811 F.2d 74,77 (2d Cir. 1987); <u>Koreag</u>, 961 F.2d at 354

(preventing unjust enrichment is "key factor"); In re N.Y. Agency of bank of Commerce &

Credit Int'l S.A., 90 N.Y.2d 410, 424, 683 N.E.2d 756, 660 N.Y.S.2d 850 (1997) ("equity and

good conscience" are "the fundamental requirement[s] for the imposition of a constructive

trust"); <u>Simonds</u>, 45 N.Y.2d at 242 (stating purpose of remedy of constructive trust is to prevent

unjust enrichment).

   In asserting that he was entitled to the proceeds of the sale of the Property, the Defendant

relies largely on his uncorroborated self-serving testimony that he financed the down payment

and carrying costs.  Although the Defendant submitted a copy of the $10,000 check as evidence

that he provided the funds for the down payment, he submitted no documentation supporting his

claims that he made mortgage payments, and that he paid other carrying charges on the Property.

Furthermore, while the Defendant testified that the $10,000 down payment check provided to the

Debtor represented his investment in the property, other evidence submitted by the Defendant

supports the conclusion that the payment constituted a loan to the Debtor.  In Exhibit VII of the

Opposition, entitled "Loans to Davanand Singh," the Defendant provided a list of purported

loans to the Debtor.  The $10,000 check dated October 16, 2002, which funded the down

payment for the Property, was included on that list, contradicting Defendant's testimony that the

Debtor purchased the Property on Defendant's behalf.

   To support his contention that he funded improvements for the Property, the Defendant

submitted receipts of purchases made from home improvement stores.  However, no evidence

was submitted to establish that those purchases were used for the Property, which may be

questioned in light of the fact that the Defendant admitted that he owned several other properties at that time (Tr., 8:1-2) and owned a construction company (Tr., 9:7-8.).

In the course of his testimony, the Defendant stated many times that he provided funds to his sister, who, he assumed, wrote checks and made payments for the mortgage and carrying charges for the Property. "I gave the money to my sister and how she made the payment I don't know. She handled most of my business." (Tr., 14:14-16.) The Defendant further testified that he was never certain who was paying the mortgage: that "it could be him [the Debtor], could be my sister." (Tr., 17:14.) This testimony falls woefully short of establishing that the Defendant funded mortgage payments or other payments for the property.

It is plain that no determination can be made based on this record that the estate would be unjustly enriched if the Defendant is required to return the Transfer. The Defendant has provided no unequivocal testimony, and no corroborating evidence, to substantiate his factual assertions. The Defendant could not even state exactly how many mortgage payments were made using his funds. In short, the record provides no basis to conclude that the Transfer was anything other than "a transfer of an interest of the debtor in property" as provided by § 548.[4]

Setoff

The Defendant also claims the right to a setoff in the event the Court avoids the Transfer as a fraudulent conveyance. The Defendant contends that subsequent to the sale of the Property, he gave or loaned the Debtor $68,799, which included $2,500 to rent an apartment, $1,108 for a vehicle used by the Debtor's former wife, $1,500 for advertisement expenses of the Debtor's law

---

[4]The Trustee's argument that the doctrine of unclean hands bars any equitable relief in favor of the Defendant is, therefore, moot.

practice, and other cash payments and checks given by the Defendant to cover various personal expenses of the Debtor.

This claim must be rejected.  "It is well established that a party will be unable to assert a setoff where the party is being sued for fraudulent transfers.  This is because where the party seeking to set off is being sued for fraudulent transfer, there is no mutuality of obligations, which is required under Code Section 553(a)."  <u>In re O.P.M. Leasing Services, Inc.</u>, 40 B.R. 380, 402 (Bankr. S.D.N.Y.), aff'd, 44 B.R. 1023 (S.D.N.Y. 1984) (citations omitted).  <u>Geron v. Schulman (In re Manshul Constr. Corp.)</u>, 2000 U.S. Dist. LEXIS 12576, 97-CV-8851, at *161 (S.D.N.Y. Aug. 30, 2000) ("[W]hen a party is being sued for fraudulent transfers there is no mutuality of obligations and thus no right to any set-off.").  "The concept of 'mutual debts' contained in section 553 of the Code, generally requires that 'the debts must be in the same right and between the same parties, standing in the same capacity.'"  <u>In re Drexel Burnham Lambert Group, Inc.</u>, 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990).  Where, as here, a defendant with a pre-petition claim against the debtor seeks to set that claim off against liability to the Trustee as a transferee of a fraudulent conveyance, mutuality is lacking because liability of such a defendant to the Trustee as a transferee of a fraudulent conveyance does not constitute a pre-petition debt owed to the debtor; rather it is a debt owed to the Trustee.  <u>Irving Trust Co. V. Frimitt</u>, 1 F. Supp. 16, 17 (S.D.N.Y. 1932).

<u>Trustee's Claims - Fraudulent Transfers</u>

The Trustee seeks to avoid the Transfer based on theories of constructive fraud under § 548(a)(1)(B) and DCL §§ 273 and 275, and actual fraud under § 548(a)(1)(A) and DCL § 276.

<u>Constructive Fraud</u>

The Trustee asserts that the Transfer was made without "reasonably equivalent value" under § 548(a)(1)(B)(i), or "fair consideration" under DCL § 273-275, at a time when the Debtor was insolvent.

Section 548(a)(1)(B) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of filing the petition, if the debtor voluntarily or involuntarily - -
>
> (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
>     (ii)    (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
>         (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
>         (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
>         (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

Similarly, under New York law a transfer may be avoided as a constructive fraudulent conveyance if made without fair consideration under to DCL § 272 and either (1) the debtor is "rendered insolvent" by the transfer, DCL § 273; (2) the debtor is left with unreasonably small capital for a pending or imminent business transaction, DCL § 274; or (3) the debtor intends or believes that he will incur debts beyond his ability to pay them as they mature.  DCL § 275. Manshul Constr. Corp., 2000 U.S. Dist. LEXIS 12576, at *145-146.

Consideration

Reasonably equivalent value is not defined by the Bankruptcy Code.  Mendelsohn v. Jacobowitz (In re Jacobs), 394 B.R. 646, 662 (Bankr. E.D.N.Y. 2008).  However, "value" is defined by § 548(d)(2) as "property, or satisfaction or securing of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2).  Fair consideration under the DCL "requires a finding that (1) the recipient either conveyed property in exchange or discharged an antecedent debt in exchange, and (2) such exchange is the 'fair equivalent' of the property received."  Ackerman v. Ventimiglia (In re Ventimiglia), 362 B.R. 71, 82 (Bankr. E.D.N.Y. 2007) (citing HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1058 (2d Cir. 1995).  Fair consideration under the DCL also requires good faith on the part of the transferee.  Jacobs, 394 B.R. at 669.  "'[Where] a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme.'"  Id. at 660 (quoting HBE Leasing Corp., 48 F.3d at 636).  Aside from the good faith element, courts have used the Code's "reasonably equivalent value" interchangeably with the DCL's "fair consideration" for purposes of analyzing constructive fraud claims under the Bankruptcy Code and the DCL.  See Geron v. Palladin Overseas Fund,

Ltd. (In re Applied Theory Corp.), 323 B.R. 838, 840-41 (Bankr. S.D.N.Y. 2005); Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.), 376 B.R. 390, 403 (Bankr. S.D.N.Y. 2007) (Under New York law, "the concept of reasonably equivalent value is embedded in the requirement that the transferor receive 'fair consideration'.").

The Defendant did not address the issue of consideration or otherwise attempt to rebut the Trustee's contention that the transfer was made without any consideration.  Although the Debtor received $15,000 from the proceeds of the sale of the Property, those funds did not constitute consideration given by the Defendant, who was neither the legal nor the equitable owner of the Property.

The Defendant claims that subsequent to the closing and "independent of and separate from the amount given to the [d]ebtor at the closing," he gave or loaned the Debtor $58,299, which included "checks written . . . to the [d]ebtor, drafts from the account . . . to the [d]ebtor, withdrawals at automatic teller machines from the account . . . to the [d]ebtor, as well as checks from the [d]efendant to creditors of the [d]ebtor."  (Opposition, Par. 28 (d)(i).)  Even if this assertion is accepted as true, these payments to the Debtor, which occurred subsequent to the Transfer, cannot constitute fair consideration for the Transfer for the purposes of § 548 or the DCL.  In order to satisfy the statutory requirement for "reasonably equivalent value" § 548 or "fair consideration" under the DCL, a conveyance must satisfy an antecedent debt, or constitute a present exchange. Pergament v. Reisner (In re Reisner), 357 B.R. 206, 214 (Bankr. E.D.N.Y. 2006) (citing 5 COLLIER ON BANKRUPTCY, ¶ 548.05[1][b]); HBE Leasing Corp., 61 F.3d at 1061.

Exhibit VII of the Opposition, entitled "Loans to Davanand Singh," reflects two loans made to the Debtor by the Defendant prior to the Transfer: $10,000, which funded the down payment for the Property, and $500, used for a down payment on a vehicle for the Debtor's wife. Even if these loans are treated as antecedent debts of the Debtor which were satisfied by the Transfer, the conclusion that the Transfer lacked fair consideration does not change.  While dollar-for-dollar equivalence is not required, the value of the consideration may not be "'disproportionately small' as compared to the value of the transferred property." Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003).  The amount of these purported loans to the Debtor - - $10,500 in the aggregate - - is greatly disproportionate to the $101,826.46 Transfer.  This disparity leads to the conclusion that neither "reasonably equivalent value" under the Code nor "fair consideration" under the DCL was exchanged for the Transfer.  Id.; See also HBE Leasing Corp., 61 F.3d at 1061 (antecedent debt in the amount of $75,010 for unpaid legal fees found disproportionately small as compared with the value of a transferred bond in the amount of $227,000 and note in the amount $278,000).

Insolvency

In order to recover the Transfer as a constructively fraudulent conveyance, the Trustee must also establish that the Debtor was insolvent when the Transfer was made, or was rendered insolvent by the Transfer.  DCL § 273; 11 U.S.C. § 548(a)(1)(B)(ii)(1).  Under the DCL, a person is insolvent "when the present saleable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  DCL § 272.  Section 101 of the Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a

fair valuation." 11 U.S.C. 101(32). "'Insolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer." Jacobs, 394 B.R. at 672 (quoting Universal Church v. Geltzer, 463 F.3d 218, 226 (2d Cir. 2006), cert. denied, 549 U.S. 1113, 127 S. Ct. 961, 166 L. Ed. 2d 706 (2007).

The Trustee argues that based on the Debtor's scheduled assets and liabilities, as well as on the proofs of claim filed in the Debtor's case, the Debtor was either insolvent on the date of the Transfer or rendered insolvent as a result of the Transfer in accordance with the balance sheet test. The record supports this conclusion. In the course of the Debtor's bankruptcy, the Trustee sold the Debtor's property in Bayside, New York (the "Bayside Property"), which yielded net proceeds of $401,515, fifty percent of which was paid to the Debtor's wife on account of her interest as a co-owner in the Bayside Property. A review of the proofs of claim filed in the Debtor's case shows that $353,655.60 of Debtor's priority and general unsecured debts were incurred prior to the Transfer and continued to exist on the filing date. As the Trustee points out, the sum of the net proceeds being held by the Trustee representing the Debtor's interest in the Bayside Property ($200,757.50) and the amount of the Transfer ($103,858.63) was insufficient to satisfy the debts that existed as of the date of the Transfer. Under the balance sheet test, therefore, the Debtor was insolvent at the time of the Transfer, as his assets were exceeded by his liabilities.

Moreover, "[o]nce it is established that a debtor transferred property without fair consideration, . . . the law presumes that the transfer rendered him insolvent." In re Corcoran,

246 B.R. 152, 163 (Bankr. E.D.N.Y. 2000).  The Defendant has not attempted to rebut this

presumption.

Actual Fraud

Section 548(a)(1)(a) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to
> or for the benefit of an insider under an employment contract) of
> an interest of the debtor in property, or any obligation (including
> any obligation to or for the benefit of an insider under an
> employment contract) incurred by the debtor, that was made or
> incurred on or within 2 years before the date of filing the petition,
> if the debtor voluntarily or involuntarily - -
>
> > (A) made such transfer or incurred such obligation
> > with actual intent to hinder, delay, or defraud any
> > entity to which the debtor was or became, on or
> > after the date that such transfer was made or such
> > obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A).

DCL § 276 similarly provides that "[e]very conveyance made and every obligation

incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or

defraud either present or future creditors, is fraudulent as to both present and future creditors."

DCL § 276.[5]  Under DCL § 276, a conveyance will be set aside as fraudulent regardless of the

adequacy of consideration given for the transfer where the [transferor's] actual intent to defraud

creditors is proven."  Manshul, 2000 U.S. Dist. LEXIS 12576 at *128 (citing McCombs, 30 F.3d

---

[5] Section 548 and DCL§ 276 are substantially similar such that "if a transfer is fraudulent under
the DCL, it is also fraudulent under Section 548 of the Bankruptcy Code. Manshul, 2000 U.S.
Dist. LEXIS 12576, at *120 n.7. The only material difference between the two statutes is the
limitations period.  DCL § 276 "has a six-year statute of limitations as opposed to the [two]-year
reach back period provided under the Bankruptcy Code."  Silverman v. Actrade Capital, Inc. (In
re Actrade Fin. Techs., Ltd.), 337 B.R. 791, 799 (Bankr. S.D.N.Y. 2005).

at 328). The party seeking to set aside the conveyance has the burden of proving actual intent to defraud on the part of the transferor by clear and convincing evidence. Id. at 128-29.

Because fraudulent intent is rarely susceptible to direct proof, the Second Circuit has recognized "badges of fraud," which constitute circumstantial evidence of actual intent to defraud. Salomon v. Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983). The badges of fraud include: (1) lack or inadequacy of consideration; (2) a close relationship between the transferor and transferee; (3) the retention of possession, benefit or use of the property by the transferor; (4) the financial condition of the transferor before and after the transfer in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry. Id.

"The existence of a badge of fraud is merely circumstantial evidence and does not constitute conclusive proof of actual intent." Actrade Fin. Techs., Ltd., 337 B.R. at 809 (citing 4 COLLIER ON BANKRUPTCY, ¶ 548.03[2] (15th ed. 1983)). The existence of multiple badges of fraud, however, can constitute the requisite clear and convincing evidence of actual intent to defraud. Id. A review of the record shows that multiple badges of fraud are present in this case. With respect to the first badge of fraud, the Debtor received no consideration for the Transfer. With respect to the second badge of fraud, although the Defendant is not an "insider" as defined by § 101(31), based on the Defendant's written submissions and testimony, it is clear that there was a very close relationship between the two friends. This is evident from the fact that, according to the Defendant, he gave or loaned the Debtor $58,299 in a series of conveyances

subsequent to the Transfer to cover personal and business expenses and debts (Opposition, Par. 28 (d)(i).)  With respect to the third badge of fraud, because these gifts and loans to the Debtor were made subsequent to the Transfer, the Debtor may be viewed as having retained the benefit and use of the transferred funds.  While the funds that constituted the Transfer were accessible to the Debtor through gifts and loans made by the Defendant, the funds remained out of the reach of the Debtor's creditors in the Defendant's bank account.  As to the fourth badge, Debtor's financial condition before and after the Transfer, the record establishes that the Debtor was insolvent at the time of the Transfer.  In connection with the final badge of fraud, the Trustee argues, and the Court agrees, that the timing of the Transfer is suspect in light of the fact that the Debtor's wife commenced a matrimonial action against him in 2005, which was still pending at the time of the Transfer.

Based on the presence of multiple badges of fraud, and absent any rebuttal by the Defendant, the Court finds that the Trustee satisfied her burden to establish that the Transfer was made with an intent to hinder, delay or defraud the Debtor's creditors pursuant to DCL § 276. See Kaiser 722 F.2d 1574 (affirming decision finding actual fraud under DCL § 276, where trustee established several badges of fraud including a lack of consideration for the transfer of a home from a debtor to his wife, when the debtor was insolvent, where he retained the property for his use and enjoyment); Pereira v. Grecolas Ltd. (In re Saba Enters.), 421 B.R. 626, 644 (Bankr. S.D.N.Y. 2009) (finding clear and convincing evidence of actual intent based on presence of five of the six badges of fraud).

<u>Attorneys' Fees Under DCL § 276-a</u>

The Trustee seeks to recover attorneys' fees from the Defendant pursuant to DCL § 276-a, which provides in pertinent part:

> In an action or special proceeding brought by a . . . trustee in bankruptcy . . . to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action . . . the . . . trustee in bankruptcy . . . shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney[s'] fees of the . . . trustee in bankruptcy . . . in such action or special proceeding, and the . . . trustee in bankruptcy . . . shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment.

DCL § 276-a.  In order to recover attorneys' fees under DCL § 276-a, the Trustee must establish that the Defendant received the Transfer with actual intent to hinder, delay, or defraud creditors. <u>Cadle Co. v. Newhouse</u>, 20 Fed. Appx. 69, 74 (2d Cir. 2001).  "'Under [DCL] § 276-a, attorneys' fees may not be awarded against a defendant who is a grantee of a fraudulent conveyance, without a specific finding that he was aware of and participated in the actual fraud.'" <u>Id.</u> (quoting <u>Carey v. Crescenzi</u>, 923 F.2d 18, 20 (2d Cir. 1991)); <u>Ackerman v. Kovac (In re All American Petrolium Corp.)</u>, 259 B.R. 6, 19 (Bankr. E.D.N.Y. 2001) ("[A]ward of attorney[s'] fees in a fraudulent conveyance action is not appropriate in the absence of a showing of actual intent on the part of the defendant.").  "'[A]t the very least, before charging [the transferees] personally with attorney[s'] fees, there should be a finding of their actual knowledge of the circumstances that render these conveyances fraudulent.'" <u>Id.</u> (quoting <u>Carey v. Crescenzi</u>, 923 F.2d at 20).

The Trustee did not allege actual intent on the part of the Defendant to defraud the Debtor's creditors; nor did the Trustee allege that the Defendant had knowledge of the extent of the Debtor's debt or knowledge of the Debtor's pending matrimonial proceedings.  Therefore, attorneys' fees cannot be awarded in this case under DCL § 276-a.

<u>Conclusion</u>

For the foregoing reasons, the Court finds that the Transfer was constructively fraudulent and made with actual intent to hinder, delay, or defraud.  A separate order will issue.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                      Case No. 06-44392-CEC

Davanand Singh,                                             Chapter 7
                              Debtor.
------------------------------------------------------------x
Debra Kramer, as Trustee of the
Estate of Davanand Singh,
                              Plaintiff,
                                                            Adv. Pro. No. 08-1036-CEC

              -against-

Vishwa Sooklall,
                              Defendant.
------------------------------------------------------------x


<u>DECISION</u>


Appearances:

David A. Blansky, Esq.                    Michael J. Connolly, Esq.
LaMonica Herbst & Maniscalco, LLP         118-34 128 Street
3305 Jerusalem Avenue                     Ozone Park, NY 11420-2827
Wantagh, NY 11793                         Attorney for Defendant
Attorney for Plaintiff


                        CARLA E. CRAIG
              Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion for summary judgment of Debra Kramer, the Chapter 7 Trustee ("Plaintiff" or "Trustee") on her complaint against Vishwa Sooklall ("Defendant"), seeking to avoid a transfer of property of the estate made by Davanand Singh ("Debtor"), who died subsequent to the commencement of this bankruptcy case, to the Defendant as a fraudulent conveyance pursuant to § 548[1] and New York's Debtor and Creditor Law ("DCL") §§ 273, 275 and 276, or in the alternative, as a preferential transfer pursuant to § 547 ("Complaint"). The Trustee also seeks recovery of her legal fees and costs under DCL § 276-a. For the reasons set forth below, judgment is granted in favor of the Trustee. The Trustee's request for legal fees and costs under DCL § 276-a is denied.

<u>Jurisdiction</u>

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (E), 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

<u>Procedural History</u>

On November 16, 2006 (the "Filing Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On March 3, 2008, the Trustee commenced this adversary proceeding, seeking to avoid a transfer to the Defendant in the amount of $101,826.46, which constituted proceeds of the sale of a coop owned by the Debtor. The Trustee filed a motion for summary judgment, and after briefing and preliminary arguments, the parties

---

[1]Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.

stipulated that one issue of material fact exists: whether the Defendant held the equitable interest

in the coop and the Debtor only legal title, such that the Defendant was entitled to the sale

proceeds.  An evidentiary hearing was held on this issue.

Facts

The following material facts in this case are undisputed.

On or about October 17, 2002, the Defendant gave the Debtor a check in the amount of

$10,000, dated October 16, 2002, to be used as a down payment for the purchase of a

cooperative apartment located at 35-10 Clearview Expressway, Unit 348, Bayside, New York

11361 (the "Property").  After consummation of the purchase, title to the Property was in the

Debtor's name, as were the shares of stock and lease for the Property.  The Defendant did not

attend the closing of the Debtor's purchase of the Property.  Defendant's name never appeared in

the title record or on the shares of stock for the Property.  The Debtor applied for a mortgage to

finance the balance of the purchase price of the Property (the "Mortgage").  Debtor was the sole

mortgagor and the only obligor named in the underlying note.  The Defendant did not acquire

title to the Property and did not apply for the mortgage for the Property.  Defendant was unable

to qualify for such a loan because of other mortgages outstanding, on which he was obligated.

In or about October of 2005, Debtor entered into a contract to sell the Property for

$210,000.00.  The Defendant did not see the contract of sale until his deposition on November

30, 2007.  When the Property was initially offered for sale, the Debtor signed the listing and

broker agreements.  The Debtor exclusively communicated with the buyers of the Property and

their counsel, and negotiated with the real estate broker concerning the broker's commission;

Defendant did not participate in any of these.  A closing on the sale of the Property was held on

or about February 10, 2006.  The Debtor attended the closing; the Defendant did not.  The Mortgage was satisfied at the closing.  According to the HUD-1 settlement statement executed by Debtor at the closing, the sum of $103,858.63 was due him from the proceeds of sale of the Property.  The Defendant did not see the HUD-1 settlement statement until after the closing on the sale.

From the proceeds of the sale, the Defendant received a bank check in the sum of $101,826.46, dated February 9, 2006 (the "Transfer").  A bank check was also issued at the closing and made payable to the Debtor in the sum of $15,000, dated February 9, 2006.

The Debtor had incurred substantial debts prior to the date of the Transfer that remained due and owing as of the Filing Date.  The Debtor was insolvent at the time of the Transfer or rendered insolvent as a result of the Transfer.  The proofs of claim filed in Debtor's case total $353,655.60.  The Debtor died on April 6, 2008.

## Positions of the Parties

The Trustee argues that the Transfer was a transfer of "an interest of the debtor in property" as provided by § 548, avoidable by the Trustee as a fraudulent conveyance, or as a preferential transfer under § 547.  The Trustee contends that the Transfer constitutes an actual fraudulent transfer under § 548(a)(1)(A) and DCL § 276; a constructive fraudulent transfer under § 548(a)(1)(B) and DCL §§ 273 and 275; or in the alternative, a preferential transfer under § 547.  The Trustee also contends that pursuant to Fed. R. Civ. P. 8(c), the Defendant waived his right to assert the affirmative defenses raised in the Amended Opposition to the Motion for Summary Judgment ("Opposition") by failing to plead them in the answer.

In opposition to the Trustee's fraudulent conveyance claims, the Defendant argues that the $101,826.46, which constituted the Transfer, was not "an interest of the debtor in property" subject to the Trustee's avoidance powers because the Debtor was acting as an agent of the Defendant for the purchase and sale of the Property. 11 U.S.C. § 548(a). Additionally, the Defendant argues that subsequent to the sale of the Property, the Defendant gave or loaned the Debtor amounts that exceed the amount of the Transfer.

Discussion

Waiver of Affirmative Defenses

The Trustee contends that the Defendant waived his right to assert affirmative defenses by failing to plead them in his answer as required by Fed. R. Civ. P. 8(c)(1), made applicable to this adversary proceeding by Fed. R. Bankr. P 7008(a). The Defendant first interposed the defense that he, not the Debtor, held the equitable interest in the Property, in his opposition to the Trustee's motion for summary judgment. The Trustee argues that the failure to assert this affirmative defense in the answer should, as a matter of law, be deemed a waiver of the defense.

The Trustee's motion cannot be granted on this basis. "It is well established in this Circuit that an affirmative defense may be asserted even at summary judgment where the party opposing the affirmative defense has the opportunity to respond effectively to that defense, and has otherwise suffered no prejudice as a result of its late pleading." In re Livent, Inc. Noteholders Sec. Litig., 355 F. Supp. 2d 722, 727 (S.D.N.Y. 2005) (citing Astor Holdings Inc. v. Roski, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003)); Kelly v. Al Tech., 2010 U.S. Dist. LEXIS 37807, 09 Civ. 962, at *57-58 (S.D.N.Y. Apr. 8, 2010); Palmer v. Garuti, 2009 U.S. Dist. LEXIS 11432, 3:06-CV-795, at *23 ((D. Conn. Feb. 17, 2009) (allowing affirmative defense of

good faith not raised in answer where both parties had opportunity to brief the issue and address it in oral argument precluding any prejudice to the party opposing the defense).

The Trustee had ample opportunity to respond to the affirmative defenses and did so in his reply.  Furthermore, whether the Debtor acted as an agent for the Defendant in the purchase of the Property, was stipulated by both parties as the sole factual issue to be addressed at the evidentiary hearing, and the Trustee had the opportunity to cross examine the Defendant extensively at the hearing.  Clearly, the Trustee was afforded sufficient notice of the defenses to respond to them and was not prejudiced by the Defendant's delay.

<u>Defendant's Arguments</u>

<u>Agency</u>

The Defendant argues that the Transfer cannot be avoided by the Trustee because the Debtor was never entitled to the sale proceeds that constituted the Transfer, and therefore, the funds did not constitute "an interest of the debtor in property" under § 548 (a)(1).  "A trustee can only avoid and recover 'property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'" <u>Buchwald v. Di Lido Beach resort, Ltd. (In re McCann, Inc.)</u>, 318 B.R. 276, 282 (Bankr. S.D.N.Y. 2004) (<u>quoting</u> <u>Begier v. Internal Revenue Serv.</u>, 496 U.S. 53, 58 (1990)).

The Defendant testified that the Debtor was acting as an agent on behalf of the Defendant for the purchase of the Property, in exchange for a finder's fee which was paid to the Debtor when the Property was sold.  (Tr.,[2] 7:23-25; 8:1-7; 10:8-11.)  The Defendant further testified

_____

[2]Citations to "Tr." refer to the transcript of the evidentiary hearing held on March 1, 2010.

that, although title was held in the Debtor's name, the Defendant provided the funds for the

down payment, (Tr., 8:11) paid all carrying charges, (Tr., 9:1-4) and funded home improvement

projects (Tr., 9:5-10), consisting of "approximately thirty thousand dollars to repair and upgrade

[the Property] so as to increase its value for resale."  (Amended Opposition, Par. 7(d).).

Because there is no writing memorializing the purported agency relationship between the

Debtor and the Defendant, the Defendant is asking the Court to find the existence of such a

relationship based on his testimony.  This request must be denied.  Under New York law, "the

authority of an agent who signs a contract for the sale of land must be authorized in writing."

Roberts v. Karimi, 251 F.3d 404, 406 (2d Cir. 2001); Cohen v. Treuhold Capital Group, LLC (In

re Cohen), 2010 U.S. Dist. LEXIS 894, 09-CV-3724, at *57-58 (E.D.N.Y. Jan. 6, 2010) (citing

N.Y. Gen. Oblig. Law § 5-703(2)) ("A contract . . . for the sale[] of any real property, or an

interest therein, is void unless the contract or some note or memorandum thereof, expressing the

consideration, is in writing, subscribed by the party to be charged, or by his lawful agent

thereunto *authorized by writing*") (emphasis added); See also 1-11 Warren's Weed New York

Real Property § 11.08 ("An agent's authorization to contract for the purchase of real property for

an undisclosed principal must be in writing.").  It is undisputed that the Defendant did not grant

authority to the Debtor in writing to act on his behalf.  Therefore, any contention by the

Defendant that he was entitled to the proceeds of the sale of the Property because the Debtor

acted as his agent in connection with the purchase and sale must be rejected.

Equitable Ownership and Unjust Enrichment

Alternatively, the Defendant argues that he was the equitable owner of the Property, and

that he was for that reason entitled to the proceeds of the sale.  Without explicitly articulating the

argument, Defendant seems to be taking the position that the Debtor held the Property and its proceeds in constructive trust for him, and that the Transfer was therefore not a transfer of "an interest of the debtor in property" as provided by § 548.[3]

A constructive trust may be imposed to prevent unjust enrichment where, for example, "'property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest.'" In re Rama Group, 01-CV-0424E, 2002 U.S. Dist. LEXIS 8864, at *7-8 (W.D.N.Y. May 6, 2002) (quoting Simonds v. Simonds, 45 N.Y.2d 233, 242, 380 N.E.2d 189, 408 N.Y.S.2d 359 (N.Y. 1978)).

Whether the imposition of a constructive trust is appropriate is an issue governed by state law.  Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard Appliance Corp.), 874 F.2d 88, 93 (2d Cir. 1989); Cadle Co. v. Mangan (In re Flanagan), 503 F.3d 171, 181 (2d Cir. 2007). In New York, a party seeking the imposition of a constructive trust must generally establish a confidential or fiduciary relationship, a promise, express or implied, a transfer made in reliance on that promise, and unjust enrichment.  In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352 (2d Cir. 1992).  "Although these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be 'rigidly limited.'"  Id. (quoting Simonds, 45 N.Y.2d at 241).  While the absence of some of these factors may not preclude the imposition of a constructive trust, "it is the final factor - - unjust enrichment - - that 'lies at the heart' of the

---

[3]Defendant cites a Florida case, In re Moodie, 362 B.R. 554 (Bankr. S.D. Fla. 2007) to support an argument that a resulting trust was created in his favor.  This case is inapposite; under New York law, a resulting trust may be established only if title is taken without consent of the person who paid the consideration, or if the property was purchased with another person's money in violation of a trust.  Mendel v. Hewitt, 161 A.D. 2d 849, 901, 555 NYS 2d 899 (3d Dep't 1990) (citing N.Y.E.P.T.L. § 7-1.3(a)).  Here, no such facts are alleged.

remedy." <u>Skippers & Mar. Servs. V. KfW</u>, 2008 U.S. Dist. LEXIS 101510, 06 CV 07041, at *13

(Dec. 8, 2008) (<u>quoting</u> <u>Brand v. Brand</u>, 811 F.2d 74,77 (2d Cir. 1987); <u>Koreag</u>, 961 F.2d at 354

(preventing unjust enrichment is "key factor"); In re N.Y. Agency of bank of Commerce &

Credit Int'l S.A., 90 N.Y.2d 410, 424, 683 N.E.2d 756, 660 N.Y.S.2d 850 (1997) ("equity and

good conscience" are "the fundamental requirement[s] for the imposition of a constructive

trust"); <u>Simonds</u>, 45 N.Y.2d at 242 (stating purpose of remedy of constructive trust is to prevent

unjust enrichment).

   In asserting that he was entitled to the proceeds of the sale of the Property, the Defendant

relies largely on his uncorroborated self-serving testimony that he financed the down payment

and carrying costs.  Although the Defendant submitted a copy of the $10,000 check as evidence

that he provided the funds for the down payment, he submitted no documentation supporting his

claims that he made mortgage payments, and that he paid other carrying charges on the Property.

Furthermore, while the Defendant testified that the $10,000 down payment check provided to the

Debtor represented his investment in the property, other evidence submitted by the Defendant

supports the conclusion that the payment constituted a loan to the Debtor.  In Exhibit VII of the

Opposition, entitled "Loans to Davanand Singh," the Defendant provided a list of purported

loans to the Debtor.  The $10,000 check dated October 16, 2002, which funded the down

payment for the Property, was included on that list, contradicting Defendant's testimony that the

Debtor purchased the Property on Defendant's behalf.

   To support his contention that he funded improvements for the Property, the Defendant

submitted receipts of purchases made from home improvement stores.  However, no evidence

was submitted to establish that those purchases were used for the Property, which may be

questioned in light of the fact that the Defendant admitted that he owned several other properties at that time (Tr., 8:1-2) and owned a construction company (Tr., 9:7-8.).

In the course of his testimony, the Defendant stated many times that he provided funds to his sister, who, he assumed, wrote checks and made payments for the mortgage and carrying charges for the Property. "I gave the money to my sister and how she made the payment I don't know. She handled most of my business." (Tr., 14:14-16.) The Defendant further testified that he was never certain who was paying the mortgage: that "it could be him [the Debtor], could be my sister." (Tr., 17:14.) This testimony falls woefully short of establishing that the Defendant funded mortgage payments or other payments for the property.

It is plain that no determination can be made based on this record that the estate would be unjustly enriched if the Defendant is required to return the Transfer. The Defendant has provided no unequivocal testimony, and no corroborating evidence, to substantiate his factual assertions. The Defendant could not even state exactly how many mortgage payments were made using his funds. In short, the record provides no basis to conclude that the Transfer was anything other than "a transfer of an interest of the debtor in property" as provided by § 548.[4]

Setoff

The Defendant also claims the right to a setoff in the event the Court avoids the Transfer as a fraudulent conveyance. The Defendant contends that subsequent to the sale of the Property, he gave or loaned the Debtor $68,799, which included $2,500 to rent an apartment, $1,108 for a vehicle used by the Debtor's former wife, $1,500 for advertisement expenses of the Debtor's law

_____

[4] The Trustee's argument that the doctrine of unclean hands bars any equitable relief in favor of the Defendant is, therefore, moot.

practice, and other cash payments and checks given by the Defendant to cover various personal expenses of the Debtor.

This claim must be rejected. "It is well established that a party will be unable to assert a setoff where the party is being sued for fraudulent transfers. This is because where the party seeking to set off is being sued for fraudulent transfer, there is no mutuality of obligations, which is required under Code Section 553(a)." In re O.P.M. Leasing Services, Inc., 40 B.R. 380, 402 (Bankr. S.D.N.Y.), aff'd, 44 B.R. 1023 (S.D.N.Y. 1984) (citations omitted). Geron v. Schulman (In re Manshul Constr. Corp.), 2000 U.S. Dist. LEXIS 12576, 97-CV-8851, at *161 (S.D.N.Y. Aug. 30, 2000) ("[W]hen a party is being sued for fraudulent transfers there is no mutuality of obligations and thus no right to any set-off."). "The concept of 'mutual debts' contained in section 553 of the Code, generally requires that 'the debts must be in the same right and between the same parties, standing in the same capacity.'" In re Drexel Burnham Lambert Group, Inc., 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990). Where, as here, a defendant with a pre-petition claim against the debtor seeks to set that claim off against liability to the Trustee as a transferee of a fraudulent conveyance, mutuality is lacking because liability of such a defendant to the Trustee as a transferee of a fraudulent conveyance does not constitute a pre-petition debt owed to the debtor; rather it is a debt owed to the Trustee. Irving Trust Co. V. Frimitt, 1 F. Supp. 16, 17 (S.D.N.Y. 1932).

Trustee's Claims - Fraudulent Transfers

The Trustee seeks to avoid the Transfer based on theories of constructive fraud under § 548(a)(1)(B) and DCL §§ 273 and 275, and actual fraud under § 548(a)(1)(A) and DCL § 276.

Constructive Fraud

The Trustee asserts that the Transfer was made without "reasonably equivalent value" under § 548(a)(1)(B)(i), or "fair consideration" under DCL § 273-275, at a time when the Debtor was insolvent.

Section 548(a)(1)(B) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of filing the petition, if the debtor voluntarily or involuntarily - -
>
> (B)     (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
>> (ii)     (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>
>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>
>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

Similarly, under New York law a transfer may be avoided as a constructive fraudulent conveyance if made without fair consideration under to DCL § 272 and either (1) the debtor is "rendered insolvent" by the transfer, DCL § 273; (2) the debtor is left with unreasonably small capital for a pending or imminent business transaction, DCL § 274; or (3) the debtor intends or believes that he will incur debts beyond his ability to pay them as they mature.  DCL § 275. Manshul Constr. Corp., 2000 U.S. Dist. LEXIS 12576, at *145-146.

      Consideration

Reasonably equivalent value is not defined by the Bankruptcy Code.  Mendelsohn v. Jacobowitz (In re Jacobs), 394 B.R. 646, 662 (Bankr. E.D.N.Y. 2008).  However, "value" is defined by § 548(d)(2) as "property, or satisfaction or securing of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2).  Fair consideration under the DCL "requires a finding that (1) the recipient either conveyed property in exchange or discharged an antecedent debt in exchange, and (2) such exchange is the 'fair equivalent' of the property received."  Ackerman v. Ventimiglia (In re Ventimiglia), 362 B.R. 71, 82 (Bankr. E.D.N.Y. 2007) (citing HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1058 (2d Cir. 1995).  Fair consideration under the DCL also requires good faith on the part of the transferee.  Jacobs, 394 B.R. at 669.  "'[Where] a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme.'"  Id. at 660 (quoting HBE Leasing Corp., 48 F.3d at 636).  Aside from the good faith element, courts have used the Code's "reasonably equivalent value" interchangeably with the DCL's "fair consideration" for purposes of analyzing constructive fraud claims under the Bankruptcy Code and the DCL.  See Geron v. Palladin Overseas Fund,

Ltd. (In re Applied Theory Corp.), 323 B.R. 838, 840-41 (Bankr. S.D.N.Y. 2005); Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.), 376 B.R. 390, 403 (Bankr. S.D.N.Y. 2007) (Under New York law, "the concept of reasonably equivalent value is embedded in the requirement that the transferor receive 'fair consideration'.").

The Defendant did not address the issue of consideration or otherwise attempt to rebut the Trustee's contention that the transfer was made without any consideration. Although the Debtor received $15,000 from the proceeds of the sale of the Property, those funds did not constitute consideration given by the Defendant, who was neither the legal nor the equitable owner of the Property.

The Defendant claims that subsequent to the closing and "independent of and separate from the amount given to the [d]ebtor at the closing," he gave or loaned the Debtor $58,299, which included "checks written . . . to the [d]ebtor, drafts from the account . . . to the [d]ebtor, withdrawals at automatic teller machines from the account . . . to the [d]ebtor, as well as checks from the [d]efendant to creditors of the [d]ebtor." (Opposition, Par. 28 (d)(i).) Even if this assertion is accepted as true, these payments to the Debtor, which occurred subsequent to the Transfer, cannot constitute fair consideration for the Transfer for the purposes of § 548 or the DCL. In order to satisfy the statutory requirement for "reasonably equivalent value" § 548 or "fair consideration" under the DCL, a conveyance must satisfy an antecedent debt, or constitute a present exchange. Pergament v. Reisner (In re Reisner), 357 B.R. 206, 214 (Bankr. E.D.N.Y. 2006) (citing 5 COLLIER ON BANKRUPTCY, ¶ 548.05[1][b]); HBE Leasing Corp., 61 F.3d at 1061.

Exhibit VII of the Opposition, entitled "Loans to Davanand Singh," reflects two loans made to the Debtor by the Defendant prior to the Transfer: $10,000, which funded the down payment for the Property, and $500, used for a down payment on a vehicle for the Debtor's wife. Even if these loans are treated as antecedent debts of the Debtor which were satisfied by the Transfer, the conclusion that the Transfer lacked fair consideration does not change. While dollar-for-dollar equivalence is not required, the value of the consideration may not be "'disproportionately small' as compared to the value of the transferred property." Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003). The amount of these purported loans to the Debtor - - $10,500 in the aggregate - - is greatly disproportionate to the $101,826.46 Transfer. This disparity leads to the conclusion that neither "reasonably equivalent value" under the Code nor "fair consideration" under the DCL was exchanged for the Transfer. Id.; See also HBE Leasing Corp., 61 F.3d at 1061 (antecedent debt in the amount of $75,010 for unpaid legal fees found disproportionately small as compared with the value of a transferred bond in the amount of $227,000 and note in the amount $278,000).

Insolvency

In order to recover the Transfer as a constructively fraudulent conveyance, the Trustee must also establish that the Debtor was insolvent when the Transfer was made, or was rendered insolvent by the Transfer. DCL § 273; 11 U.S.C. § 548(a)(1)(B)(ii)(1). Under the DCL, a person is insolvent "when the present saleable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." DCL § 272. Section 101 of the Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a

fair valuation." 11 U.S.C. 101(32). "'Insolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer." Jacobs, 394 B.R. at 672 (quoting Universal Church v. Geltzer, 463 F.3d 218, 226 (2d Cir. 2006), cert. denied, 549 U.S. 1113, 127 S. Ct. 961, 166 L. Ed. 2d 706 (2007).

The Trustee argues that based on the Debtor's scheduled assets and liabilities, as well as on the proofs of claim filed in the Debtor's case, the Debtor was either insolvent on the date of the Transfer or rendered insolvent as a result of the Transfer in accordance with the balance sheet test. The record supports this conclusion. In the course of the Debtor's bankruptcy, the Trustee sold the Debtor's property in Bayside, New York (the "Bayside Property"), which yielded net proceeds of $401,515, fifty percent of which was paid to the Debtor's wife on account of her interest as a co-owner in the Bayside Property. A review of the proofs of claim filed in the Debtor's case shows that $353,655.60 of Debtor's priority and general unsecured debts were incurred prior to the Transfer and continued to exist on the filing date. As the Trustee points out, the sum of the net proceeds being held by the Trustee representing the Debtor's interest in the Bayside Property ($200,757.50) and the amount of the Transfer ($103,858.63) was insufficient to satisfy the debts that existed as of the date of the Transfer. Under the balance sheet test, therefore, the Debtor was insolvent at the time of the Transfer, as his assets were exceeded by his liabilities.

Moreover, "[o]nce it is established that a debtor transferred property without fair consideration, . . . the law presumes that the transfer rendered him insolvent." In re Corcoran,

246 B.R. 152, 163 (Bankr. E.D.N.Y. 2000). The Defendant has not attempted to rebut this

presumption.

Actual Fraud

Section 548(a)(1)(a) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to
> or for the benefit of an insider under an employment contract) of
> an interest of the debtor in property, or any obligation (including
> any obligation to or for the benefit of an insider under an
> employment contract) incurred by the debtor, that was made or
> incurred on or within 2 years before the date of filing the petition,
> if the debtor voluntarily or involuntarily - -
>
>> (A) made such transfer or incurred such obligation
>> with actual intent to hinder, delay, or defraud any
>> entity to which the debtor was or became, on or
>> after the date that such transfer was made or such
>> obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A).

DCL § 276 similarly provides that "[e]very conveyance made and every obligation

incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or

defraud either present or future creditors, is fraudulent as to both present and future creditors."

DCL § 276.[5] Under DCL § 276, a conveyance will be set aside as fraudulent regardless of the

adequacy of consideration given for the transfer where the [transferor's] actual intent to defraud

creditors is proven." Manshul, 2000 U.S. Dist. LEXIS 12576 at *128 (citing McCombs, 30 F.3d

---

[5] Section 548 and DCL§ 276 are substantially similar such that "if a transfer is fraudulent under
the DCL, it is also fraudulent under Section 548 of the Bankruptcy Code. Manshul, 2000 U.S.
Dist. LEXIS 12576, at *120 n.7. The only material difference between the two statutes is the
limitations period.  DCL § 276 "has a six-year statute of limitations as opposed to the [two]-year
reach back period provided under the Bankruptcy Code."  Silverman v. Actrade Capital, Inc. (In
re Actrade Fin. Techs., Ltd.), 337 B.R. 791, 799 (Bankr. S.D.N.Y. 2005).

at 328).  The party seeking to set aside the conveyance has the burden of proving actual intent to

defraud on the part of the transferor by clear and convincing evidence.  Id. at 128-29.

Because fraudulent intent is rarely susceptible to direct proof, the Second Circuit has

recognized "badges of fraud," which constitute circumstantial evidence of actual intent to

defraud.  Salomon v. Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983).  The badges of fraud

include: (1) lack or inadequacy of consideration; (2) a close relationship between the transferor

and transferee; (3) the retention of possession, benefit or use of the property by the transferor; (4)

the financial condition of the transferor before and after the transfer in question; (5) the existence

or cumulative effect of a pattern or series of transactions or course of conduct after the incurring

of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the

general chronology of events and transactions under inquiry.  Id.

"The existence of a badge of fraud is merely circumstantial evidence and does not

constitute conclusive proof of actual intent."  Actrade Fin. Techs., Ltd., 337 B.R. at 809 (citing 4

COLLIER ON BANKRUPTCY, ¶ 548.03[2] (15th ed. 1983)).  The existence of multiple badges

of fraud, however, can constitute the requisite clear and convincing evidence of actual intent to

defraud.  Id.  A review of the record shows that multiple badges of fraud are present in this case.

With respect to the first badge of fraud, the Debtor received no consideration for the Transfer.

With respect to the second badge of fraud, although the Defendant is not an "insider" as defined

by § 101(31), based on the Defendant's written submissions and testimony, it is clear that there

was a very close relationship between the two friends.  This is evident from the fact that,

according to the Defendant, he gave or loaned the Debtor $58,299 in a series of conveyances

subsequent to the Transfer to cover personal and business expenses and debts (Opposition, Par. 28 (d)(i).)  With respect to the third badge of fraud, because these gifts and loans to the Debtor were made subsequent to the Transfer, the Debtor may be viewed as having retained the benefit and use of the transferred funds.  While the funds that constituted the Transfer were accessible to the Debtor through gifts and loans made by the Defendant, the funds remained out of the reach of the Debtor's creditors in the Defendant's bank account.  As to the fourth badge, Debtor's financial condition before and after the Transfer, the record establishes that the Debtor was insolvent at the time of the Transfer.  In connection with the final badge of fraud, the Trustee argues, and the Court agrees, that the timing of the Transfer is suspect in light of the fact that the Debtor's wife commenced a matrimonial action against him in 2005, which was still pending at the time of the Transfer.

Based on the presence of multiple badges of fraud, and absent any rebuttal by the Defendant, the Court finds that the Trustee satisfied her burden to establish that the Transfer was made with an intent to hinder, delay or defraud the Debtor's creditors pursuant to DCL § 276. See Kaiser 722 F.2d 1574 (affirming decision finding actual fraud under DCL § 276, where trustee established several badges of fraud including a lack of consideration for the transfer of a home from a debtor to his wife, when the debtor was insolvent, where he retained the property for his use and enjoyment); Pereira v. Grecolas Ltd. (In re Saba Enters.), 421 B.R. 626, 644 (Bankr. S.D.N.Y. 2009) (finding clear and convincing evidence of actual intent based on presence of five of the six badges of fraud).

Attorneys' Fees Under DCL § 276-a

The Trustee seeks to recover attorneys' fees from the Defendant pursuant to DCL § 276-a, which provides in pertinent part:

> In an action or special proceeding brought by a . . . trustee in bankruptcy . . . to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action . . . the . . . trustee in bankruptcy . . . shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney[s'] fees of the . . . trustee in bankruptcy . . . in such action or special proceeding, and the . . . trustee in bankruptcy . . . shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment.

DCL § 276-a.  In order to recover attorneys' fees under DCL § 276-a, the Trustee must establish that the Defendant received the Transfer with actual intent to hinder, delay, or defraud creditors. Cadle Co. v. Newhouse, 20 Fed. Appx. 69, 74 (2d Cir. 2001).  "'Under [DCL] § 276-a, attorneys' fees may not be awarded against a defendant who is a grantee of a fraudulent conveyance, without a specific finding that he was aware of and participated in the actual fraud.'" Id. (quoting Carey v. Crescenzi, 923 F.2d 18, 20 (2d Cir. 1991)); Ackerman v. Kovac (In re All American Petroleum Corp.), 259 B.R. 6, 19 (Bankr. E.D.N.Y. 2001) ("[A]ward of attorney[s'] fees in a fraudulent conveyance action is not appropriate in the absence of a showing of actual intent on the part of the defendant.").  "'[A]t the very least, before charging [the transferees] personally with attorney[s'] fees, there should be a finding of their actual knowledge of the circumstances that render these conveyances fraudulent.'" Id. (quoting Carey v. Crescenzi, 923 F.2d at 20).

20

The Trustee did not allege actual intent on the part of the Defendant to defraud the Debtor's creditors; nor did the Trustee allege that the Defendant had knowledge of the extent of the Debtor's debt or knowledge of the Debtor's pending matrimonial proceedings. Therefore, attorneys' fees cannot be awarded in this case under DCL § 276-a.

<u>Conclusion</u>

For the foregoing reasons, the Court finds that the Transfer was constructively fraudulent and made with actual intent to hinder, delay, or defraud. A separate order will issue.



**Dated: Brooklyn, New York**
**July 20, 2010**

**Carla E. Craig**
**United States Bankruptcy Judge**